NORSE SYSTEMS, INC. *v.* TINGLEY SYSTEMS, INC.
(AC 16966)

O'Connell, C. J., and Lavery and Schaller, Js.

Argued March 23—officially released July 28, 1998

*Todd R. Bainer*, for the appellant (plaintiff)

*Michael Feldman*, with whom, on the brief, was *Charles E. Hickey*, for the appellee (defendant).

LAVERY, J. The plaintiff, Norse Systems, Inc. (Norse), appeals from the trial court's granting of summary judgment on all counts of its complaint in favor of the defendant, Tingley Systems, Inc. (Tingley). On appeal, Norse claims that the trial court improperly (1) failed to recuse itself from hearing Tingley's motion for summary judgment and (2) granted Tingley's motion for summary judgment because (a) there are genuine issues of material fact and (b) the law was misapplied with respect to (i) Tingley's special defense relating to advice of counsel and (ii) Norse's abuse of process and Connecticut Unfair Trade Practice Act (CUTPA)[1] claims. We affirm the judgment of the trial court.

The following facts are relevant to the case before this court. Norse, a Connecticut corporation, and Tingley, a Florida corporation, do business in the computer industry. Norse develops software programs and systems for health maintenance organizations. Sometime prior to 1988, Tingley had licensed the use of its health maintenance organization software program (software program) under certain conditions to Aetna Health Care Systems, Inc. (Aetna). In or about 1987, Tingley knew that Aetna intended to upgrade its computer hardware. Aetna hired Norse as a consultant to assist in its upgrading efforts. Sequoia Systems, Inc. (Sequoia), was a computer hardware vendor offering to sell Aetna a new computer. In early 1988, Tingley learned certain information that caused its principals to believe that the software program had been used in a manner that violated the license. Tingley received information that Norse had assisted Aetna and Sequoia in benchmarking[2]

---

[1] See General Statutes § 42-110a et seq.

[2] Benchmarking is a test of the compatibility among a computer software program, the data to be processed and the computer hardware.

the software program on Sequoia's equipment in Massachusetts.[3] Benchmarking necessarily involved the copying and modification of the software program. Norse stood to gain a sizable commission from Sequoia if Aetna purchased Sequoia's equipment.

On May 16, 1988, Tingley commenced suit against Norse in the United States District Court for the District of Connecticut, alleging copyright infringement, unauthorized access to and misuse of a computer system in violation of General Statutes §§ 53a-251 and 52-570b, tortious interference with a business relationship, misappropriation of trade secrets, common-law unfair competition and CUTPA violations. On July 28, 1988, the District Court, Nevas, J., dissolved the temporary restraining order obtained by Tingley, finding that there was no actual or imminent harm to Tingley. Norse moved for sanctions against Tingley.[4]

On August 3, 1998, Tingley voluntarily dismissed the suit without prejudice pursuant to Rule 41 (a) (1) of the Federal Rules of Civil Procedure.[5] Norse opposed the dismissal and moved to have Aetna made a party defendant to the action. The District Court, Nevas, J., granted Norse's motion to vacate the dismissal and ordered Tingley to join Aetna as a party defendant. Tingley amended its complaint to cite in Aetna. Norse answered the amended complaint and alleged ten counterclaims against Tingley, including federal antitrust violations.

---

[3] Under the terms of the license, the software program was to be used on a designated computer at Aetna's Middletown offices.

[4] The motion for sanctions was eventually denied based on a stipulation of the parties.

[5] Rule 41 (a) (1) provides in relevant part: "Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment . . . ."

Following discovery and the filing of numerous motions, only two counts of Tingley's amended complaint went to the jury, copyright infringement and tortious interference with business relations. Norse ultimately limited its counterclaims to five, alleging tortious interference with contractual relations, libel, slander, CUTPA violations and common-law unfair competition. Following trial, the jury returned a verdict in favor of Norse on both the amended complaint and its own counterclaims.[6] The jury awarded Norse $1,610,500. Tingley filed postverdict motions, and the District Court reduced the verdict to $515,000.[7] Norse again moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.[8] In denying the motion for sanctions, the District Court, Restani, J., found that Tingley had probable cause to bring its claim for copyright violation.

Judgment entered in the federal litigation on September 15, 1993. On September 20, 1993, Norse commenced the present action against Tingley alleging vexatious litigation with malice pursuant to General Statutes § 52-568 (2), vexatious litigation pursuant to General Statutes § 52-568 (1), abuse of process and CUTPA violations. In 1995,[9] Norse filed an application for a prejudgment remedy of more than $1,900,000, which was denied by the trial court following a two day hearing in October, 1996. Tingley then filed a motion for summary judgment, which the trial court granted. Norse appealed. We affirm the judgment of the trial court.

[6] Following postverdict motions, Norse was awarded $515,000, in damages on its counterclaim, $20,000 of which was punitive in nature pursuant to CUTPA.

[7] Some of the damages awarded by the jury were duplicative.

[8] Rule 11 (c) provides: "Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."

[9] Further action in the Superior Court was delayed pending the outcome of Tingley's appeal to the United States Court of Appeals for the Second Circuit.

## I

Norse's first claim is that the trial court improperly failed to recuse itself from hearing Norse's motion for summary judgment. Norse's claim of judicial bias has two bases: first, that the trial court was privy to settlement discussions and, second, that the trial court acted with bias toward Norse as a result of the prejudgment remedy hearing. We do not agree.

The following additional facts are necessary for our review of this claim. Norse's application for a prejudgment remedy was heard on October 9 and 10, 1996. Prior to the hearing, the trial court met with counsel in chambers during which time the prospects of settlement were discussed. Although there is no transcript of the discussion, the trial court made brief mention of the settlement discussion on the record prior to the prejudgment remedy hearing.[10] Immediately following the trial court's comment about the settlement discussion, *counsel for Norse* asked that the parties waive any objection to the prejudgment remedy application's being heard by a judge trial referee.[11]

Lief Petterson, president of Norse, was called as a witness to testify, in part, as to the damages Norse incurred as a result of the federal litigation. During cross-examination, Tingley's counsel elicited a response from Petterson that revealed that he had not accurately represented the amount of attorney's fees Norse had incurred at the time of his testimony in the federal case.[12] A portion of the transcript of the federal

---

[10] The trial court stated: "All right. Our efforts in another direction having failed, let's proceed with the hearing on the PJR."

[11] See Practice Book § 430, now Practice Book (1998 Rev.) § 19-3.

[12] In the federal case, Petterson testified that Norse had incurred approximately $250,000 in legal fees. During the prejudgment remedy hearing, Petterson testified that from the time the federal litigation commenced until the temporary injunction was dissolved, Norse incurred attorney's fees at an hourly rate (approximately $80,000). After the District Court vacated Tingley's withdrawal of the federal action, Norse entered into a contingency fee

trial was placed in evidence. It revealed that during his closing argument to the federal jury, Norse's counsel, who knew the actual fee arrangements between Norse and its attorneys, adopted Petterson's testimony as to attorney's fees.[13] The trial court voiced concern about the discrepancy between Petterson's federal and state court testimony, and the argument of Petterson's counsel before the federal jury. The trial court instructed Norse's trial counsel[14] to prepare an affidavit for the trial court to review and consider the next steps, if any.[15] The trial court denied Norse's application for a prejudgment remedy at the conclusion of the hearing.

On October 29, 1996, Norse filed a motion for recusal. The motion for recusal was based on the trial court's comments about Petterson's testimony and the final argument of Norse's counsel in the federal trial. The motion did not include an affidavit or a certification by counsel that the motion was made in good faith. The motion was denied by the trial court on December 5, 1996.

agreement with its counsel. Norse's counsel, however, continued to provide Norse with summaries of the time devoted to the case. During the prejudgment remedy hearing, Petterson was unable to distinguish fees related to the defense of Tingley's claim from fees attributable to the prosecution of its counterclaims.

[13] Norse's counsel argued to the jury, "Now, there is what is called punitive damages. But under that category, you can also take note of the legal fees and costs that Norse has incurred in defending itself—that Norse has incurred in defending itself against these charges, in dealing with these charges, up through today. You have heard evidence from Mr. Petterson that that cost was about $250,000."

[14] The attorney who represented Norse in the federal trial was not the same attorney who represented Norse in the Superior Court, although the two attorneys were partners at the time of the federal trial.

[15] The trial court stated: "What I would like, Mr. Bainer, to set my mind at ease that I'm doing my chore diligently and properly, I'd like an affidavit from you, outlining the fee arrangement with Mr. Petterson, so that I am able to ascertain from that document what the state of the billings and finances were at the time of trial. I know the contingency fee basis was involved there. I'd like a statement of that, that I can examine at my leisure and do the fair thing and right thing."

On December 16, 1996, Tingley filed a motion for summary judgment, which Norse opposed. The trial court heard argument on the motion for summary judgment on February 3, 1997. After Tingley's counsel had argued, Norse's counsel moved orally for the trial court to recuse itself. For the first time, Norse's counsel cited the trial court's participation in the settlement discussion as a basis for the motion and claimed the trial court had not given Norse a fair hearing with respect to the prejudgment remedy application. The trial court denied the motion for recusal.

"A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." Practice Book § 997, now Practice Book (1998 Rev.) § 1-23. "This provision creates a mandatory procedure to be followed by any party seeking to recuse a judge. See *State* v. *Cook*, 183 Conn. 520, 521–23, 441 A.2d 41 (1981)." *State* v. *Weber*, 6 Conn. App. 407, 412, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986). " 'It is axiomatic that the burden of establishing a record that a judicial impropriety has occurred which demonstrates or gives the appearance of bias or partiality so as to require recusal rests with the party who claims the occurrence of such an impropriety.' *State* v. *Santangelo*, 205 Conn. 578, 584, 534 A.2d 1175 (1987)." *State* v. *Teel*, 42 Conn. App. 500, 506, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996).

In this case, Norse did not comply with the rules of practice in either instance in which it attempted to have the trial court recuse itself. Norse's written motion contained no affidavit setting forth the facts relied on

to show the grounds for disqualification; it also contained no good faith certificate of the counsel of record. Norse never requested or demanded a hearing to present evidence to support its claim of judicial disqualification. "Representations made by counsel are not evidence in the record upon which we can rely in our review of the judge's conduct. . . . [T]he dictates of Practice Book § 997 [now Practice Book (1998 Rev.) § 1-23], which requirements we hold to be mandatory are a condition precedent to a hearing on a judge's disqualification. See *State* v. *Cook,* supra [183 Conn. 521–23]." *State* v. *Weber,* supra, 6 Conn. App. 413.

The motion made during the summary judgment hearing was not only oral, it was untimely, not having been filed ten days before the hearing. Norse also failed to show good cause why its second motion[16] for recusal was not made within ten days of the hearing, particularly in view of the fact that the trial court denied the prejudgment remedy approximately four months before the hearing on the summary judgment motion. Because Norse failed to comply with the requirements of § 997, the trial court properly denied the motions for recusal. See *O'Brien* v. *Coburn,* 46 Conn. App. 620, 628, 700 A.2d 81, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

II

Norse's second claim is that the trial court improperly granted Tingley's summary judgment motion. It bases that claim on its assertions that there are genuine issues of material fact and that the court misapplied the law with respect to Tingley's advice of counsel special

---

[16] Even if we were to consider Norse's oral motion for recusal as a motion to reargue, it, too, would not have been timely filed. Practice Book § 204B (a), now Practice Book (1998 Rev.) § 11-12, provides in relevant part: "A party who wishes to reargue a decision or order rendered by the court shall, within *twenty days* from the issuance of notice of the rendition of the decision or order, file a motion to reargue . . . ." (Emphasis added.)

defense, and Norse's abuse of process and CUTPA claims. We disagree.

The following facts are relevant to this claim. Norse's suit against Tingley alleges the following claims: vexatious litigation with malice pursuant to § 52-568 (2)[17] (count one), vexatious litigation pursuant to § 52-568 (1)[18] (count two), abuse of process (count three) and CUTPA (count four). In its answer, Tingley asserted eleven special defenses, three of which are relevant to this appeal: Norse's claims are barred by the doctrines of res judicata and collateral estoppel and, with respect to the vexatious litigation claim, Tingley's actions were in reliance on the advice of counsel. Additional facts will be included as necessary.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established." *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384, now Practice Book (1998 Rev.) § 17-49. A "material fact" is a fact that will make a difference in the result of the case. See *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 489, 280 A.2d 359 (1971). The party

---

[17] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[18] See footnote 17.

seeking summary judgment "has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). Pursuant to Practice Book §§ 380 and 381, now Practice Book (1998 Rev.) §§ 17-45 and 17-46, the party adverse to such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Connell* v. *Colwell,* 214 Conn. 242, 246–47, 571 A.2d 116 (1990).

"While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.' *Knight* v. *U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987)." *Gallien* v. *Connecticut General Life Ins. Co.,* 49 F.3d 878, 882 (2d Cir. 1995). "On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980)." *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.,* 33 Conn. App. 563, 567, 636 A.2d 1377 (1994).

A defendant's motion for summary judgment "is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves

no triable issue of fact." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985). Because issues in this appeal concern questions of law, this court reviews such claims de novo. See *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991); *Schratwieser* v. *Hartford Casualty Ins. Co.*, 44 Conn. App. 754, 757, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340 (1997).

## A

Norse's first claim is that Tingley's motion for summary judgment should have been denied because there is a genuine issue of material fact as to whether Tingley had probable cause to initiate the federal court litigation. The following additional facts are necessary for our analysis.

Tingley's motion for summary judgment was based on its having probable cause to commence a copyright infringement claim against Norse in federal court. The motion was supported by affidavits of Tingley's counsel, and the testimony of various Tingley and Norse employees, among other things. Norse opposed summary judgment, claiming that because the federal jury found Tingley had malice in bringing its claim of copyright infringement against Norse, Tingley lacked probable cause and the real purpose in commencing the litigation was to put Norse out of business. Norse also heavily relies on its interpretation of Tingley's prelitigation investigation.

In granting Tingley's motion for summary judgment, the trial court found the following facts. "The dispute had its origin in a licensing agreement between Tingley, a computer software company, and Aetna. Aetna was licensed to use Tingley software, but was to maintain it in a confidential manner. In 1988, Tingley learned its copyrighted software had been permitted by Aetna to be taken to another site, where a computer seller tested

it with an eye to determining whether the software could be utilized with that company's equipment. Norse was the 'middle man' for this operation, and if the tests indicated compatibility between the Tingley software and the seller's equipment, Norse would be entitled to a commission . . . .

"Tingley's investigation confirmed these facts, and there does not appear to be any question but that these events occurred. In fact, one George Curley, an Aetna employee, admitted in the federal litigation that this had occurred and that the Tingley-Aetna licensing agreement had been breached."

In addition to those facts, which the trial court described as "undisputed," the trial court took note of the evidence that Tingley presented in support of its summary judgment motion: affidavits from two of its attorneys, experts in computer law who were involved in the federal litigation, attesting that it was their belief that "a sufficient factual basis existed to allege each of the claims asserted,"[19] and a transcript of the District Court on Norse's postverdict motion for Rule 11 sanctions.[20]

Although it is pleaded in several alternatives, Norse's claim against Tingley is really one of vexatious litigation. "A vexatious suit is a type of malicious prosecution

---

[19] One of the attorneys also testified at the hearing on the summary judgment motion.

[20] In ruling on Norse's postverdict motion for Rule 11 sanctions, the District Court, Restani, J. stated: "The motion for sanctions. Motions for sanctions are inappropriate . . . . [Tingley] had a good claim for copyright infringement. It has had some other dubious claims, which it voluntarily dismissed, and at one point in time it had a reason for bringing those claims. It soon found out that it didn't have a very good reason, and that caused a lot of the problems here. It should have found out sooner, I suppose, but as far [as] what it did in this court, after the counsel was substituted, I really do not see a good reason to rule for sanctions, and they are denied. I think that Tingley pursued its claims appropriately. If it overstated some of its claims, well, [Norse] overstated some of its claims, too, and I think . . . it put Tingley to some disadvantage, at least initially, with its moving around on

action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor . . . . Probable cause is the knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action . . . . Malice may be inferred from lack of probable cause . . . . The want of probable cause, however, cannot be inferred from the fact that malice was proven . . . . The existence of probable cause is an absolute protection . . . and what facts, and whether particular facts, constitute probable cause is always a question of law." (Citations omitted; internal quotation marks omitted.) *Vandersluis* v. *Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978).

"For purposes of a vexatious suit action, '[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' *Wall* v. *Toomey*, 52 Conn. 35, 36 (1884); accord *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.*, 172 Conn. 577, 584, 376 A.2d 60 (1977). 'Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.' *Shea* v. *Berry*, 93 Conn. 475, 477, 106 A. 761 (1919). Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991).

---

its damages theory . . . . Rule 11 sanctions in such a case, with laws going back and forth, would not be appropriate . . . Rule 11 is out. No sanctions."

Neither of the parties disputes that the software program was copied and taken from Aetna's offices in Middletown and transported to Sequoia's facilities in Massachusetts for the benchmarking. Also, no one disputes that Norse was a party to the benchmarking. Therefore, the trial court ruled Norse had not "successfully responded to [Tingley's] arguments as to the facts and law" and granted summary judgment. What facts constitute probable cause is a question of law. See *Vandersluis* v. *Weil*, supra, 176 Conn. 356.

The essence of Norse's appeal is that it does not agree with the trial court's finding of facts and would have this court reinterpret the facts. Norse bases its argument on the federal jury's finding that Tingley commenced the federal suit with malice. Because there was a finding of malice, Norse believes Tingley brought the federal court action to put Norse out of business. What Norse believes is not relevant to the issue of Tingley's reasonable belief in grounds to commence the lawsuit. Although malice is probably a motivating factor in much litigation, malice alone is not sufficient to prove vexatious litigation. Want of probable cause may prove malice, but malice does not prove a lack of probable cause. See id.

Norse's claim that the District Court's ruling on the Rule 11 sanctions motion is not res judicata as to the question of probable cause is not availing. The trial court did not rule that the issue of probable cause was previously adjudicated in the District Court. The trial court merely identified the District Court's ruling as evidence of Tingley's reasonable belief that it had reasonable grounds for prosecuting a copyright infringement claim against Norse. The trial court properly granted Tingley's motion for summary judgment on the claim of vexatious litigation.

B

Norse's next claim is that the trial court improperly applied the law with respect to Tingley's special defense to the vexatious litigation claim that it relied on the advice of counsel. We agree with the trial court.

Tingley presented uncontested evidence from two lawyers, experts in the field of computer law, who testified that based on Tingley's investigation there were reasonable grounds for Tingley to allege the claims it asserted. "Advice of counsel is a complete defense to an action of . . . vexatious suit when it is shown that the defendant . . . instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, or which he was charged with knowing." Id., 361. Norse contends that the testimony of one of the lawyers with respect to the law of copyrighted materials was legally incorrect. We need not decide that question. "The fact that the attorney's advice was unsound or erroneous will not affect the result." Id.

Norse attempts to distinguish *Vandersluis* from the facts of the case before us. Norse claims that the "advice of counsel" defense is available only to common-law claims of vexatious litigation and not the § 52-568 statutory causes of action it alleged. Norse cites no law in support of its argument. The elements of a common-law or statutory cause of action for vexatious litigation are identical. Therefore, the special defense of advice of counsel can be pleaded in response to both causes of action.

C

Norse's final claim is that the trial court improperly applied the doctrine of res judicata to count three, abuse of process, and count four, CUTPA, in granting Tingley's motion for summary judgment. Because public policy

prohibits a party from relitigating a matter that has been previously determined, we agree with the trial court that Norse's CUTPA and abuse of process claims are barred by the doctrine of res judicata.

"[C]laim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. . . .

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose . . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it.

"We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional

test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action. . . .

"We recognize that the mere explication of the doctrine of claim preclusion does not resolve all difficulties which may appear at the point of application. As was stated long ago, the law of estoppel by judgment is well settled, the only difficulty being in its application to the facts. . . . The difficulty has always been in determining what matters are precluded by the former adjudication. . . . In applying the rule of claim preclusion, the critical question is how broad a definition to give to the term same claim or cause of action. The broader the definition, the broader the scope of preclusion." (Citations omitted; internal quotation marks omitted.) *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 589–91, 674 A.2d 1290 (1996).

1

In the federal court litigation, Norse asserted a tortious interference with contractual relations counterclaim against Tingley, alleging in part that Tingley, "knowing of the contractual relationship by and between Norse and Sequoia, intentionally sought to interfere with said contractual relationship by making certain defamatory statements and allegations to Sequoia about Norse with the intent of stopping any payment to Norse pursuant to its agreement with Sequoia." The federal jury found in favor of Norse on this counterclaim, and judgment entered against Tingley.

In the amended complaint before the trial court, Norse asserted a CUTPA claim, alleging, in part: "Tingley engaged in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of such trade or commerce in violation of General Statutes

§ 42-110b, including but not limited to the following: (A) Tingley commenced the previous underlying frivolous and vexatious litigation against Norse for the primary improper ulterior motive of financially destroying its business competitor, [Norse]; (B) Tingley commenced the underlying previous frivolous and vexatious litigation with knowledge and with the intent that it would substantially interfere with and terminate any existing advantageous business or contractual relationship between Norse and Aetna and/or Norse or Sequoia . . . ."

The CUTPA claim before the trial court is an attempt to assert a hybrid claim of both tortious interference with a business or contractual relationship and vexatious litigation. This is a tortious interference with a business or contractual relationship claim recast as a CUTPA claim. Any claim for tortious interference with Norse's business or contractual relationships was resolved in the federal litigation. Norse cannot now have a second bite of the apple for damages resulting from an injury to its business interests. Therefore, Norse's CUTPA claim is barred by the doctrine of res judicata.

2

Norse next claims that the trial court improperly held that Norse's abuse of process claim was barred by the doctrine of res judicata because it could have been asserted in the federal litigation. Norse maintains that because the claim was not ripe for adjudication, it could not have been asserted in the federal litigation. Although we affirm the trial court's judgment that Norse's abuse of process claim is barred by the doctrine of res judicata, we reach this conclusion on the basis of grounds different from those relied on by the trial

court.[21] We find that the claim is barred because it is essentially a claim of tortious interference with a business or contractual relationship that was decided by the federal court. We also hold that as a matter of law, the facts of this case do not constitute an abuse of process.

Norse alleged no abuse of process claim in its counterclaims in the federal litigation. In count three of its amended complaint before the trial court, Norse alleged that Tingley had commenced a civil action against it in the District Court, that Tingley had prosecuted the prior action "with the primary ulterior and improper motive to harm and/or destroy its business competitor, Norse. . . . There was no probable cause justifying commencement and prosecution of the [federal litigation] . . . [and] Norse suffered financial damages as a result of Tingley's abuse of process . . . ."

Once again, Norse attempts to assert a tortious interference with business or contractual relationships as another cause of action, specifically, abuse of process. A tortious interference with business or contractual relationship claim cannot be converted into an abuse of process claim simply by labeling it as such. Furthermore, the facts of this case, as a matter of law, do not constitute abuse of process.

"The action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable cause, and has terminated unsuccessfully. The plaintiff must allege and prove that the original action, whether civil or criminal, was instituted without probable cause, with malice, and that it terminated in his favor. Abuse of process is the misuse of

---

[21] "We can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

process regularly issued to accomplish an unlawful ulterior purpose. . . . The distinction between malicious prosecution or vexatious suit and abuse of process as tort actions is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceeding, not in the issue of process but in its abuse." *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 532, 148 A. 330 (1930). "An action for abuse of process lies against any person using 'a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.' *Varga* v. *Pareles*, [137 Conn. 663, 667, 81 A.2d 112 (1951)]; *Schaefer* v. *O. K. Tool Co.*, [supra, 532–33]. Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of 'a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . .' . . . Comment b to § 682 explains that the addition of 'primarily' is meant to exclude liability 'when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.' See also 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121." (Emphasis in original.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987).

In the case before us, Tingley commenced the federal litigation with probable cause to protect its copyright. Tingley pursued federal litigation for its intended purpose, i.e., to obtain damages for copyright violations by means of a successful lawsuit. A party does not abuse legal process merely by filing a lawsuit. To allege a viable cause of action for abuse of process, a claimant

must "point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." Id., 497. Norse failed to allege any specific injury beyond the normal contemplation of private litigation.

The judgment is affirmed.

In this opinion the other judges concurred.