[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The complaint in this matter arises out of a Department of Children and Families (DCF) investigation of allegations of neglect in 1995. The plaintiffs are the parents of three children. The youngest child, in February of 1995 was about 2-3 months old. Both of the parents are attorneys. The children at that time were cared for when the parents were not available during the day at Child Care Center of Stamford, Inc. A complaint came into DCF regarding the infant child of the plaintiffs on February 17, 1995 at about 6pm., stating he was not properly fed and had been exposed to auto exhaust fumes. DCF treated it as an emergency. The defendant, Colberg-Perez, a DCF investigator, went to the Greenwich Police Department (the town of the plaintiffs' family residence) requested police escort, and with escort, went to the plaintiffs' home to investigate. A babysitter was at the home; the parents were not at home. The babysitter let the defendant Colberg-Perez in the home. Colberg-Perez observed cases of formula on the counter; she inquired of the babysitter where the children were and was told that they were sleeping. Colberg-Perez called her supervisor from the kitchen with the opinion that there was no one at apparent risk and then left the home. The next day, Colberg-Perez met with the plaintiffs, with their attorney present; she observed the children and also spoke with the infant's pediatrician, gaining assurance that the infant was well cared for. Three days later, Colberg-Perez handed off the matter to the Stamford DCF office, as being a low risk to the children of the plaintiff's family. There, Bella DCF social worker took over the matter under the supervision of D'Angelo of DCF. On that date, Bella sent plaintiffs a letter explaining the complaints that had been made to DCF by the day care center. About ten days later, the plaintiffs met with Bella and promised to provide to DCF a copy of a letter to the day care indicating that they thought the complaints to DCF by the day care had been retaliatory, and, a phone call from the pediatrician affirming the good care for the infant. This had not been accomplished 20 days later. DCF, who has 45 days by regulation to make a finding regarding allegations of neglect or abuse, therefore through Bella sent the plaintiffs a letter saying if they did not get CT Page 4041 this promised information, they would have to substantiate neglect and transfer the matter to their treatment unit. Upon receiving that letter, the plaintiff Marlowe arranged for the two items to be completed. On the 45th day, DCF through DeAngelo sent correspondence to the plaintiffs that neglect and abuse was not confirmed and that their information would be expunged from the DCF computer.
Thereafter, the plaintiffs in this matter filed a claim with the Claims Commissioner seeking permission to sue the state regarding their asserted claims against DCF and its employees. In the claim, the plaintiffs alleged that DCF "in an abuse of power, conspired with a mandated reporter (i) to harass, threaten and intimidate the claimants Tracy A. Marlow and Sarah M. Starkweather; (ii) to intentionally inflict emotional distress on the claimants Tracy A. Marlow and Sarah M. Starkweather; and (iii) to destroy the claimants' family. The claimants allege that DCF, acting through its agents and employees, engaged in actions which were extreme and outrageous, which they knew or should have known would cause the claimants to suffer emotional distress, and which in fact caused the claimants to suffer emotional distress." On December 3, 1999 after hearing, the Claims Commissioner found that the evidence did not support these charges. He found, "Claimants' own failure to cooperate with DCF prompted the letter from Bella. That letter merely warned claimants of the possible negative consequences of their failure to produce the letter and facilitate contact with the pediatrician, who DCF could not question without their consent." Accordingly, the Claims Commissioner denied the claimants who are the plaintiffs here permission to sue, finding theirs was not a just claim under the statute.
The plaintiffs subsequently filed the instant lawsuit against Colberg-Perez, Bella, DeAngelo, Andrew Manjuck of the Greenwich Police Department, Child Care Center of Stamford, Inc., Jane F. Norgren and Carol S. Aoki (also known as Carol Whitescarver), employees of the Child Care Center. The court has before it a motion for summary judgement filed by the defendants, Kathryn Ann Bella, Dayle W. De Angelo and Nancy Colberg-Perez. The operative amended complaint dated November 30, 1998 is addressed to these defendants at counts seven, nine, thirteen and fourteen. However, count seven is just a re-pleading of a count that had previously been dismissed by the court (Moran, J.). The plaintiffs conceded the same at oral argument. Therefore, the court dismisses count seven of the amended complaint.
Count Nine of the Complaint is addressed to Manjuck, who is not a party to this motion, and, Colberg-Perez. It complains that Colberg-Perez entered the premises of the plaintiffs' home without a search warrant, that the plaintiffs suffered extreme emotional distress and that Colberg-Perez acted in violation of the Fourth and Fourteenth Amendments
CT Page 4042 of the United States Constitution.
In Count Thirteeen and Fourteen, as against Bella and DeAngelo, the plaintiffs allege that the written communication from Bella, "acting under the direction of and in conspiracy with defendant DeAngelo" was extreme and outrageous and with the intention of causing emotional duress to the plaintiffs.
 I. Legal Standard
Practice Book § 17-49 ". . . requires that [t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citation omitted; internal quotation marks omitted.) Hryniewiczv. Wilson, 51 Conn. App. 440, 443, 722 A.2d 288 (1999). "A `material' fact is a fact that will make a difference in the result of a case."River Dock Pile, Inc. v. Ins. Co. of North America, 57 Conn. App. 227,231, 747 A.2d 1060 (2000).
"[T]he burden of showing the nonexistence of any material fact is on the party seeking summary judgment. . . ." (Internal quotation marks omitted.) Hryniewicz v. Wilson, supra, 51 Conn. App. 443. "It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence outside the pleadings to show the absence of any material dispute." (Emphasis in original; internal quotation marks omitted.) Gambardella v. Kaoud, 38 Conn. App. 355, 358,660 A.2d 877 (1995).
Correspondingly, "the party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Hryniewicz v. Wilson, supra,51 Conn. App. 443-44. "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts in accordance with Practice Book (1998 Rev.) §§ 17-45 and 17-46 . . . which contradict those stated in the movant's affidavits and documents and show that there is a genuine issue for trial. If he does not so respond, summary judgment shall be entered against him." (Internal quotation marks omitted.) Id., 444. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Internal quotation marks omitted.) Norse Systems, Inc. v. TingleySystems, Inc., 49 Conn. App. 582, 591, 715 A.2d 807 (1998). Daly v.Shawmut Bank, 58 Conn. App. 427, 439-430, ___ A.2d ___ (2000). CT Page 4043
 II. Fourth Amendment Issues
In Count Nine, plaintiffs claim that the defendant Colberg-Perez has violated the plaintiffs' fourth amendment rights to be free from search and seizure. The undisputed facts disclose the following events relevant to this matter. Colberg-Perez entered the plaintiffs' home with a police officer when the babysitter let them in. She indicated she was a social worker. The babysitter let them in because the police officer requested entrance. She allowed the social worker Colberg-Perez to ask questions and look around because she thought it was related to the fact that the plaintiffs' children were adopted. When Colberg-Perez asked to see the children who were asleep, she did not pursue it when the babysitter hesitated. Colberg-Perez did not pursue it. The entire time that Colberg-Perez was in the plaintiffs' home, she was in the common living space of the living room and the kitchen. Most of the time she spent in the kitchen, looking at objects on the counter and quickly opening and shutting cabinet doors. She inquired about baby formula which she located. She was only briefly in the living room, where the infant child was asleep. Colberg-Perez was in the home between 12 and 15 minutes.
"A search . . . is not unreasonable under . . . the fourth amendment to the constitution of the United States . . . if a person with authority to do so has freely consented. . . ." (Emphasis added; citations omitted; internal quotation marks omitted.) State v. Cobb, 251 Conn. 285, 314,743 A.2d 1 (1999), cert. denied, ___ U.S. ___, 121 S.Ct. 106,148 L.Ed.2d 64
(2000).[1] The state bears the burden of proving that "the person who purported to consent had the authority to do so." State v. Reagan,209 Conn. 1, 7, 546 A.2d 839 (1988).
"The test applicable to third-party consent requires the state to prove that the consenting party possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. . . . Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that . . . the others have assumed the risk that one of their number might permit the common areas to be searched." (Citations omitted; internal quotation marks omitted.) Statev. Zindros, 189 Conn. 228, 246-47, 456 A.2d 288 (1983), cert. denied,465 U.S. 1012, 104 S.Ct. 1014, 79 L.Ed.2d 244 (1984); see also UnitedStates v. Matlock, 415 U.S. 164, 171 n. 7, ___ S.Ct. ___ L.Ed.2d ___
(1974). "Adopting a functional approach to this fourth amendment issue, the consent exception reflects a fair accommodation between constitutional requirements and the encouragement of effective law CT Page 4044 enforcement with the resolution to be made under the facts and circumstances of each case." Id., 247.
There is no reported case law in Connecticut specifically addressing the question of whether a babysitter possesses the "common authority" to consent to the search of the premises. In United States v. Broaden,116 F.3d 1486 (9th Cir.), cert. denied, 522 U.S. 939, 118 S.Ct. 353,139 L.Ed.2d 274 (1997), however, the United States Court of Appeals for the Ninth Circuit addressed the issue and held that where a property owner left a babysitter in control of an apartment, the property owner assumed the risk that the babysitter would consent to a search of the apartment because the entire apartment was apparently within the babysitter's control. Likewise, in United States v. Thomas, 120 F.3d 564
(5th Cir.), cert. denied, 522 U.S. 1061, 118 S.Ct. 721, 139 L.Ed.2d 660
(1997), the United States Court of Appeals for the Fifth Circuit held that a babysitter has the apparent authority to consent to a search of the common areas that he has the right of access to and mutual use of in performing his functions as a babysitter.
Thus, "[w]hat is at issue when a claim of apparent consent is raised is not whether the right to be free of searches has been waived, but whether the right to be free of unreasonable searches has been violated. As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged by an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises. . . ." Illinois v. Rodriguez, 497 U.S. 177,183-84 ___ S.Ct. ___, ___ L.Ed.2d ___ (1990).
In this situation, the babysitter consented to the entrance and search as it existed of the plaintiffs' kitchen and living room. When the babysitter did not consent to the social worker going upstairs to see the other two children, Colberg-Perez did not go there. Under the analysis above, the court holds that the search was consented to by the babysitter and therefore there can be no cause of action for an unreasonable search under the Fourth and Fourteenth Amendments. Accordingly, the defendant Colberg-Perez is entitled to summary judgement on Count Nine.
 III. Counts Thirteen and Fourteen — Recklessness
The plaintiffs have claimed, in their thirteenth and fourteenth counts that certain conduct of the defendants Bella and DeAngelo was malicious and threatening, extreme and outrageous, and intended to cause the plaintiffs emotional distress. Essentially, these causes of action are for intentional torts. CT Page 4045
"In order for the plaintiff to prevail in a case for liability under . . . [a cause of action for the intentional infliction of emotional distress], four elements must be established. It must be shown that: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) DeLaurentis v. New Haven,220 Conn. 225, 266-67, 597 A.2d 807 (1991).
"In order to establish the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is morethan negligence, more than gross negligence." (Emphasis added; internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385, 415,715 A.2d 27 (1998).
The conduct in question was that of the defendants in pursuing the DCF investigation with the plaintiffs, particularly through the correspondence sent by the DCF worker in which it was made clear that if the promised information was not forthcoming, the DCF would have to substantiate neglect. The promised information was to have been provided by the plaintiffs to DCF. Plaintiffs had promised to provide access to the infant's pediatrician to confirm the child was well cared for, and, a copy of the letter plaintiffs had sent the child care center expressing the opinion that the reporting to DCF had been in retaliation for something against the plaintiffs.
Context here is important. The regulatory time frames for the investigative unit to either confirm neglect or close the file for unfounded allegations was fast closing in on the DCF worker. The plaintiffs had promised to cooperate with DCF; their failure to provide requested information precipitated the letter from Bella indicating failure to provide the information would result in confirming neglect. "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) Id., 267. "[This] liability clearly does not extend to mere insults, indignities, threats, annoyances . . . or other trivialities." Hiers v.Cohen, 31 Conn. Sup. 305, 308-09, 329 A.2d 609 (1973), citing, 1 Restatement (Second), Torts § 46. This court cannot find, as a matter of law, that the conduct of Bella or DeAngelo was extreme or outrageous. Therefore, these defendants are entitled to summary judgement on counts CT Page 4046 thirteen and fourteen. Accordingly, the court need not reach the other arguments raised by these defendants in support of their joint motion.
Summary judgement is entered in favor of the defendants Colberg-Perez, Bella, DeAngelo, and on counts Nine, Thirteen and Fourteen. Count Seven is, sua sponte, dismissed.
It is so Ordered.
Lynda B. Munro Judge of the Superior Court