## WILLIAM H. HONAN ET AL. *v.* JOSEPH DIMYAN ET AL. (AC 17121)

O'Connell, C. J., and Foti and Landau, Js.

---

Argued December 8, 1998—officially released March 2, 1999

*Nancy Burton,* for the appellants (plaintiffs).

*Thomas F. Maxwell, Jr.,* with whom was *Joseph Dimyan,* for the appellees (defendants).

### Opinion

FOTI, J. The plaintiffs appeal from the judgment of the trial court, rendered after a jury trial, in favor of the defendants. On appeal, the plaintiffs claim that the

trial court improperly (1) denied their motion for permission to file a motion for summary judgment, (2) precluded evidence concerning a collateral case, (3) denied their motion to set aside the verdict as it was against the weight of the evidence, (4) instructed the jury on their claim of invasion of privacy and (5) denied their motion for a new trial, which was based on the purported misconduct of both the trial court judge and defense counsel. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. The plaintiffs in this case are William H. Honan and his three children. In April of 1990, Milton Burton and June Burton, the maternal grandparents of the Honan children, retained the defendants, attorney Joseph Dimyan and his Danbury law partnership, Coury & Dimyan, to file a visitation petition pursuant to General Statutes § 46b-59.[1] The petition alleged that Honan and his wife, Nancy Burton,[2] had denied the Burtons reasonable visitation with respect to the Honan children and, accordingly, sought reasonable visitation rights.

In response to the visitation petition brought by the Burtons, the plaintiffs filed an amended complaint

---

[1] General Statutes § 46b-59 provides in relevant part: "The Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. . . ."

[2] Although Nancy Burton was a party to the underlying visitation petition brought by the Burtons, she was not a party to the suit that gave rise to this appeal. As a member of the Connecticut bar, however, she acted as

against the defendants dated July 5, 1990, alleging, inter alia, abuse of process, intentional infliction of emotional distress and invasion of privacy. On January 8, 1997, prior to the start of trial, the plaintiffs moved for partial summary judgment on their abuse of process count. The case had been assigned for trial, however, and the trial court refused to entertain the motion because the plaintiffs had failed to obtain the trial court's permission to file that motion pursuant to Practice Book § 17-44.

On January 9, 1997, the day before the trial began, the plaintiffs filed a motion for permission to file their motion for summary judgment, which was denied by the trial court. The case was tried and the jury returned a verdict in favor of the defendants on all of the plaintiffs' claims. Following the jury's verdict, the plaintiffs filed a motion for a new trial and a motion to set aside the verdict. The trial court denied both motions and rendered judgment in favor of the defendants. This appeal followed.

I

The plaintiffs first claim that the trial court improperly denied their motion for permission to file a motion for summary judgment. We disagree.

Practice Book § 17-44 provides in relevant part: "In any action . . . any party may move for a summary judgment at any time, *except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial. . . .*" (Emphasis added.) It is well established that the duty to provide this court with a record adequate for review rests with the appellant. See Practice Book § 60-5; *Statewide Grievance Committee* v. *Clarke*, 48 Conn. App. 545, 547, 711 A.2d 746,

both trial counsel and appellate counsel to the plaintiffs, her husband and three children.

cert. denied, 245 Conn. 923, 717 A.2d 239 (1998). In this case, we have not been provided with either a written memorandum of decision or a transcribed copy of an oral decision, signed by the trial court, stating its reasons for refusing to grant the plaintiffs permission to file their motion for summary judgment. The plaintiffs, therefore, have failed to provide us with an adequate record with which to determine whether the trial court abused its discretion in denying the plaintiffs' motion. Accordingly, we decline to review this claim.

## II

The plaintiffs next claim that the trial court improperly precluded evidence concerning a collateral case. We disagree.

It is axiomatic that "[e]vidence is admissible only if it is relevant. . . . The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." (Citations omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 569, 657 A.2d 212 (1995). "Moreover, evidentiary rulings will be overturned on appeal only where there [is] . . . a showing . . . of substantial prejudice or injustice." (Internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 247 Conn. 24, 37, 718 A.2d 425 (1998).

The cornerstone of the plaintiffs' abuse of process claim is *Castagno* v. *Wholean*, 239 Conn. 336, 684 A.2d 1181 (1996), in which our Supreme Court concluded that to bring a visitation petition pursuant to § 46b-59, the party seeking visitation must demonstrate, as a threshold matter, a "disruption of the family sufficient to justify state intervention." Id., 338. The plaintiffs claim that because their family was "intact" at the time the Burtons' visitation petition was filed, § 46b-59 was

inapplicable and could not provide the basis for a visitation petition.

At trial, the plaintiffs attempted to call Thomas Cloutier, the attorney for the defendant family in *Castagno*. Additionally, the plaintiffs attempted to introduce into evidence the pleadings from the *Castagno* case, which were, according to the plaintiffs, "indistinguishable" from the pleadings in their case. The plaintiffs argue that had the *Castagno* pleadings been introduced, and "had attorney Cloutier been permitted to testify, the jury would have had to conclude as a matter of law that *Castagno* controls this case and § 46b-59 has no application to the [plaintiffs]." The plaintiffs assert that with the introduction of this evidence, "the jury could have only concluded that [the defendants] wilfully abused [the judicial process] by instituting a lawsuit against [the plaintiffs] pursuant to a statute which had no application to them."

In ruling that Cloutier's testimony, as well as the *Castagno* pleadings, were inadmissible, the trial court determined that such evidence concerned a "collateral case" and, therefore, was irrelevant. We agree. The interjection of facts from a wholly unrelated case could have confused the jury. Additionally, we are not convinced that allowing Cloutier to "testify as to the fact of the pleadings in *Castagno*" would have established, as a matter of law, that § 46b-59 had no application to the Honan family and that, as a result, the jury would have had to conclude that Dimyan wilfully abused the judicial process. We cannot say, therefore, that the trial court abused its discretion.

In addition, the plaintiffs cannot demonstrate that they suffered substantial prejudice or injustice because of the trial court's ruling. The record discloses that the trial court admitted into evidence the headnote of our Supreme Court's decision in *Castagno*, as well as a

copy of § 46b-59. In fact, during the charge to the jury on the plaintiffs' abuse of process claim, the trial court stated: "Of course, you have a copy of the statute which was the basis of bringing [the Burtons'] petition. You also have a copy of the [*Castagno*] headnote that indicated that . . . *there was an interpretation that the statute did not apply to intact families.*" (Emphasis added.)

It is clear that the jury had before it sufficient evidence to determine that § 46b-59 did not apply to intact families. It had before it the headnote from the *Castagno* case, as well as the trial court's statement that *Castagno* "indicated" that § 46b-59 "did not apply to intact families." We cannot say that Cloutier's testimony or the *Castagno* pleadings were necessary for the prosecution of the plaintiffs' abuse of process claim.

### III

The plaintiffs next claim that the trial court improperly denied their motion to set aside the verdict because it was against the weight of the evidence. The plaintiffs argue that they presented enough evidence to prove, by a preponderance of the evidence, their claims of abuse of process, invasion of privacy and intentional infliction of emotional distress. We disagree.

"Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion. . . . The trial court may set aside a jury's verdict only if it finds that the jury could not reasonably and legally have reached its conclusion." (Citations omitted; internal quotation marks omitted.) *Mezes* v. *Mead*, 48 Conn. App. 323, 328, 709 A.2d 597 (1998).

A

The plaintiffs assert that they presented enough evidence to prove their claim of abuse of process. "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. *Varga* v. *Pareles*, [137 Conn. 663, 667, 81 A.2d 112 (1951)]; *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 532–33, 148 A. 330 (1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . . Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. See also 1 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 4.9; R. Mallen & V. Levit, Legal Malpractice (2d Ed. 1981) § 61; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 121." (Emphasis in original; internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987).

As stated previously, the underlying visitation petition instituted by the Burtons was based on § 46b-59, which provides in relevant part that "[t]he Superior Court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. . . ." The plaintiffs assert that the Burtons' visitation petition was brought "knowingly pursuant to a statute which did not apply to them." They claim, therefore, that "[o]n its face, the fact of the suit is an abuse of process." We disagree.

Again, the crux of the plaintiffs' abuse of process claim is *Castagno* v. *Wholean,* supra, 239 Conn. 336. The plaintiffs, however, overlook that the Burtons' visitation petition was filed in April, 1990, and then withdrawn in September, 1993. The *Castagno* decision, on the other hand, was not released until November, 1996. Accordingly, even if bringing a visitation petition against an intact family pursuant to § 46b-59, as that statute has been interpreted by *Castagno,* can provide the basis for an abuse of process claim, it cannot do so in this case because the defendants could not have *known* of the statute's nonapplicability until after the *Castagno* decision was released.

Further, § 46b-59 does not, on its face, state that a person bringing a visitation petition must establish the "disruption of the family sufficient to justify state intervention." Id., 338. This was the interpretation given the statute by our Supreme Court after a thorough examination of the common law and the "contextual interplay" of § 46b-59 with other statutes, as well as the statute's legislative history. Id., 340–47. It does not appear, therefore, that filing the visitation petition prior to the *Castagno* decision, in and of itself, necessarily evidences that the defendants filed that petition "knowingly pursuant to a statute which did not apply" to the plaintiffs.

In addition to the mere fact of the petition itself, the plaintiffs point to several facts that they maintain establish that the defendants abused the legal process. First, the plaintiffs assert that Dimyan "made false representations to judicial authorities" in his visitation petition. The plaintiffs assert further that Dimyan "went on to exploit his abuse of the process by peddling lies and smears [about the plaintiffs] to news media." Finally, the plaintiffs assert that Dimyan refused to accept mail from the plaintiffs' attorney during the pendency of the visitation suit.

It does not necessarily follow from the plaintiffs' allegations, however, that the defendants abused the legal process. Even if the jury believed the plaintiffs' allegations, it reasonably could have concluded that the defendants, in bringing the visitation petition, legitimately sought to secure visitation rights for the Burtons.

## B

The plaintiffs next assert that they presented sufficient evidence to prove their claim of invasion of privacy. Our Supreme Court has described the four types of invasion of privacy: "(1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye." *Venturi* v. *Savitt, Inc.*, 191 Conn. 588, 591 n.1, 468 A.2d 933 (1983).

While the plaintiffs' brief mentions three of the four types of invasion of privacy claims, their brief adequately addresses only one, i.e., that the jury could not have reasonably found that the plaintiffs failed to prove that they were placed in a false light by the defendants. The plaintiffs maintain that after bringing the visitation petition, the defendants publicized the suit and reported that the Burtons had not seen their grandchildren for more than a year and were simply seeking a chance to visit them before they "passed away." This is an apparent reference to an article that appeared in the *Danbury News-Times* on May 18, 1990. The plaintiffs claim that these statements placed them in a false light and that the defendants attempted to "create the impression that the Honan family was mean and wicked."

To establish invasion of privacy by false light, the plaintiffs were required to show that " '(a) the false

light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.' 3 Restatement (Second), Torts § 652E; see *Goodrich* v. *Waterbury Republican-American, Inc.*, [188 Conn. 107, 127, 448 A.2d 1317 (1982)]." *Jonap* v. *Silver*, 1 Conn. App. 550, 557–58, 474 A.2d 800 (1984).

At trial, the plaintiffs introduced evidence, through the testimony of one of the children, that the Burtons had, in fact, visited the Honan children during the year preceding the visitation petition. This evidence contradicts directly the statement purportedly made by the defendants that the Burtons had not seen their grandchildren for more than a year. The plaintiffs, however, have pointed to nothing in the record that supports a finding that the plaintiffs were portrayed in a manner that was highly offensive to an ordinary person, or that the defendants had knowledge of or acted in reckless disregard as to the falsity of the statement made. Absent such evidence, we cannot say that the jury could not reasonably and legally have reached its conclusion that the plaintiffs had failed to prove their claim of invasion or privacy.

C

The plaintiffs finally assert that they presented enough evidence to prove their claim of intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress, four elements must be established. "It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and

(4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991).

In support of this final sufficiency claim, the plaintiffs state that in filing the visitation petition, which, according to the plaintiffs, was based on an inapplicable statute and "premised on a lie," the defendants "could have had no purpose *other* than to create havoc in the lives of the plaintiffs and inflict emotional torture on them." (Emphasis in original.) Aside from this conclusory statement, however, the plaintiffs have directed us to little evidence that would otherwise support the elements of a claim of intentional infliction of emotional distress.[3] Absent such evidence, we cannot say that the jury could not reasonably and legally have reached its conclusion.

## IV

The plaintiffs next claim that the trial court improperly charged the jury on invasion of privacy by instructing the jury to find for the defendants if invasion of privacy occurred based on comments *related* to court proceedings, although made out of court. The plaintiffs rightly argue that statements made by attorneys in court generally would be privileged, while statements made outside of court might not be. See, e.g., *Tucker* v. *Bitonti*, 34 Conn. Sup. 643, 647, 382 A.2d 841 (1977)

---

[3] The plaintiffs do cite testimony given at trial that appears to suggest that they were at least upset by the filing of the visitation petition. For example, one of the children testified that as a result of the suit, he had experienced emotional pain. Whether the jury determined that this pain did not rise to the level of "severe" emotional distress, or simply disbelieved that testimony, we cannot say. "It is without question that the jury is the ultimate arbiter of fact and credibility. *State* v. *Dyson*, 217 Conn. 498, 506, 586 A.2d 610 (1991). As such, it may believe or disbelieve all or any portion of the testimony offered." *State* v. *Hart*, 221 Conn. 595, 604, 605 A.2d 1366 (1992).

(absolute privilege that protects witnesses, parties and attorneys from liability for defamation occurring in conduct of judicial proceeding would apply also to infraction of right of privacy in course of such proceeding).

An examination of the charge, however, discloses that the trial court properly instructed the jury and did not explain that statements made by the defendants "out of court" would be privileged.[4] In reviewing this claim, we are mindful that "the test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *Holbrook* v. *Casazza*, 204 Conn. 336, 351–52, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). The jury charge, as a whole, was not improper.

## V

The plaintiffs' final claim is that the trial court improperly denied their motion for a new trial, which they based on the purported misconduct of both the trial court judge and defense counsel. We disagree.

" 'It is [the judge's] responsibility to have the trial conducted in a manner which approaches an "atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." ' *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975), quoting *Glasser* v. *United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed.

---

[4] The trial court charged the jury as follows: "If you find the substance of any communication was related to the grandparents' petition for visitation which was a pending court action at the time of the communication, then you must find for the defendant *because of any such communications taken from the court proceedings and not outside the court*, because they are privileged communications that cannot subject . . . a defendant to liability. So, those would be any communications *within the—the courthouse*, so to speak." (Emphasis added.)

680 (1942)." *Cameron*, v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982).

In their appellate brief, the plaintiffs recite a hodge-podge of at least twelve specific instances of purported misconduct and procedural irregularity. These claims are largely unsupported by analysis or legal authority. In fact, while many of the specific instances cited occurred outside the presence of the jury, some occurred outside the courthouse itself. The plaintiffs claim that this conduct "was so prejudicial as to have deprived [them] of a fair trial." After an examination of the specific instances cited, however, we cannot say that the plaintiffs were denied a fair trial.

In this opinion the other judges concurred.